# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
JOHNSON, BERG, and KRAUSS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class DAVID V. PETERSON**
**United States Army, Appellant**

ARMY 20100851

Headquarters, 1st Armored Division and United States Division – Center
Michael J. Hargis, Military Judge
Lieutenant Colonel Ian G. Corey, Staff Judge Advocate

For Appellant: Colonel Mark Tellitocci, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Laura R. Kesler, JA; Captain A. Jason Nef, JA (on brief).

For Appellee: Major Amber J. Williams, JA; Major Ellen S. Jennings, JA; Captain Bradley M. Endicott, JA (on brief).

9 December 2011

---------------------------------
MEMORANDUM OPINION
---------------------------------

BERG, Judge:

A military judge, sitting as a general court-martial, convicted appellant, pursuant to his pleas, of violating a lawful general order and wrongfully possessing three or more images of child pornography, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 (2008) [hereinafter UCMJ]. A panel composed of officers and enlisted members sentenced appellant to be reduced to the grade of Private E1, confinement for twenty months, total forfeiture of all pay and allowances, and a dishonorable discharge. A pretrial agreement between the convening authority and appellant limited confinement to twelve months. The convening authority approved only so much of the adjudged sentence as extended to reduction to the grade of Private E1, twelve months' confinement, total forfeiture of all pay and allowances, and a dishonorable discharge.

This case is before this court for review pursuant to Article 66, UCMJ. Appellant raises one assignment of error[1] which merits discussion. We accord a measure of relief in our decretal paragraph.

## BACKGROUND

A civilian investigation in Liberty County, Georgia, identified appellant as a suspect in the distribution of child pornography via a peer-to-peer file sharing network in late 2009. Upon learning that appellant had deployed from Fort Stewart, Georgia, to Iraq, local authorities conveyed the results of their investigation to Army Criminal Investigation Division (CID) agents. Armed with a military magistrate's search authorization, CID agents seized appellant's laptop computer from his containerized housing unit (CHU) at Camp Liberty, Baghdad, Iraq, and submitted its hard drive for a forensic investigation. The forensic analysis disclosed, *inter alia*, the presence of the four adult pornographic movies and three movies displaying child pornography which are the subject of this case. Appellant subsequently admitted to CID agents, after being duly warned of his rights under Article 31(b), UCMJ, that he had downloaded the images while at Fort Stewart and transported them with him on the hard drive of his laptop computer to Iraq. Appellant also told the CID agents that he had been viewing child pornography since 2004 and possessed it for his sexual gratification.

Appellant pleaded guilty to the Specification of Charge I, acknowledging that his possession of the adult pornography violated the provisions of United States Forces – Iraq General Order Number 1. He pleaded guilty to the Specification of Charge II, conceding that his possession of the child pornography was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces. These facts, along with a thumb drive containing copies of each of the relevant adult and child pornography videos, were incorporated into appellant's stipulation of fact, considered by the military judge in determining the providency of appellant's guilty pleas, and provided to the panel charged with determining appellant's sentence. In an unsworn statement, appellant told the panel of his remorse and shame, his need to be punished for his misconduct, his failure to contemplate the harm that had been done to the victims of the child pornography, and his desire to be retained in the Army.[2] Our review of the record of

---

[1] WHETHER IT WAS PLAIN ERROR WHEN TRIAL COUNSEL INFLAMED THE PASSIONS OF THE PANEL BY IMPLYING THAT CHILDREN ON ARMY INSTALLATIONS EVERYWHERE ARE IN DANGER OF BEING SEXUALLY ABUSED BY APPELLANT AND ARGUING THAT APPELLANT SHOULD BE PUNISHED FOR ACTUALLY HARMING CHILDREN.

[2] Appellant also called five noncommissioned officer witnesses from his unit, each of whom expressed a willingness to continue serving with appellant and suggested that he still had a future in the Army.

trial reveals no significant legal issues until the government made its closing argument on sentencing to the panel.

*Trial Counsel's Closing Argument*

Trial counsel reached the crescendo of her summation with the following:

> A message needs to be sent to him that our society does not support the child pornography industry, the abuse of children, the advantage that has been taken of these children over and over again, and the accused most definitely does not deserve to stay in this Army, an Army where people value each other, value their families, as children run across Army posts everywhere, places where the accused lived. He lives a short walk from MWR, the swimming pool, elementary schools, playgrounds. He don't [sic] see a young child running and think how cute they are, they must be having so much fun, instead, he thinks of them as a sexual object. That is not the Soldier to have on our post. That is not the Soldier that we want around our families as part of the Army family. This Soldier needs to be sentenced to reduction to E1, twenty months confinement, and a dishonorable discharge.

Defense counsel did not object to this argument or seek a corrective instruction from the military judge but chose to wait and respond in his closing, pointing out there was no evidence that appellant viewed all children "as sexual objects." Defense counsel minimized the number of child videos ("three videos of child porn"), together with their relatively short duration, and asked that appellant, above all, be retained in the service. The military judge did not instruct the panel that counsels' arguments were not evidence but did remark that trial counsel's pleas for a specific sentence were "only her individual suggestions and may not be considered as the recommendation or opinion of anyone other than that individual counsel." No complaint was lodged against trial counsel's argument until appellant first asserted it as legal error in his post-trial Rules for Courts-Martial (R.C.M.) 1105 matters and now as plain error on appeal. Appellant now asks us to set aside his sentence and remand for a new sentencing hearing. The government submits that the trial counsel's comments, if error, did not affect a material right of appellant.

## DISCUSSION

*The Requirement that Prosecutorial Zeal be Tempered by Discipline*

Justice Sutherland's seventy-five year old admonition about the role of the government prosecutor is worth revisiting:

> [He] is the representative not of an ordinary party to a
> controversy, but of a sovereignty whose obligation to
> govern impartially is as compelling as its obligation to
> govern at all; and whose interest, therefore, in a criminal
> prosecution is not that it shall win a case, but that justice
> shall be done. As such, he is in a peculiar and very
> definite sense the servant of the law, the twofold aim of
> which is that guilt shall not escape or innocence suffer. He
> may prosecute with earnestness and vigor—indeed he
> should do so. But while he may strike hard blows, he is
> not at liberty to strike foul ones. It is as much his duty to
> refrain from improper methods calculated to produce a
> wrongful conviction as it is to use every legitimate means
> to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88 (1935).  Appellate courts trot out portions
of this hoary adage with some frequency because prosecutors, in their zeal to win,
sometimes lose sight of the discipline involved in serving the law and not just the
executive.  In a system of military justice premised upon the maintenance of good
order and discipline, it is especially important that trial counsel understand and
internalize the disciplined obligations of their dual roles.  There is no acceptable
basis to go outside the record and engage in inflammatory rhetoric; a simple plea to
the panel to look at the evidence would have sufficed.

### *Improper Argument and the High Hurdle of Plain Error*

Improper argument is a question of law that we review de novo.  *United States
v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011).  In the absence of a defense objection to
trial counsel's argument, we review appellant's claim for plain error. *United States
v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007).  Appellant must show that there was
error which was plain or obvious and the error "materially prejudiced a substantial
right." *Id*.  As our higher court only too recently noted, "trial counsel must not 'fan
the flames of the jurors' fears by predicting that if they do not convict . . . some . . .
calamity will consume their community.'"  *United States v. Marsh*, 70 M.J. 101, 106
(C.A.A.F. 2011) (citing *Hodge v. Hurley*, 426 F.3d 368, 384 (6th Cir. 2005)).

We have no difficulty concluding that the trial counsel's argument was both
error and plain.  There is no evidence in the record that appellant lived near MWR,
swimming pools, elementary schools or playgrounds.  There is no evidence that
appellant viewed all children as sexual objects.  There is no evidence that appellant
was anything other than a consumer of child pornography, as egregious as that was.
The argument was an unfounded but calculated effort to portray appellant as a sexual
predator of young children, imminently dangerous to the panel members' families
and friends.  "Trial counsel's invitation to the court members to imagine themselves

as potential future victims only served to inflame a fear as to what might happen if the panel did not adjudge a discharge." *Marsh*, 70 M.J. at 107.

We must decide whether this error prejudiced appellant. Our higher court has distilled from general federal practice three factors for us to use to assess the prejudice: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005); *Erickson*, 65 M.J. at 225 (evaluating weight of evidence supporting the sentence).

(1) *Severity of the Misconduct.* We find that trial counsel's improper comments strayed far beyond the evidence in the record and consequently were an invitation to the panel "to accept new and inflammatory information as factual based solely on her authority as the trial counsel." *Id.* Trial counsel's misconduct, while brief, was severe.[3]

(2) *Measures Adopted to Cure the Misconduct.* We also find that the military judge's brief comments about trial counsel's request for a specific sentence did not directly address the tainted argument and remedy the misconduct. There was no curative instruction or even the generic instruction to the panel members that counsels' argument is not evidence.

(3) *Weight of the Evidence Supporting the Sentence.* The government called but one witness in aggravation - appellant's current company commander - who was insufficiently familiar with appellant to give a qualified opinion on appellant's rehabilitative potential. Appellant's enlisted record brief suggested no prior misconduct. Appellant countered with the testimony of five character witnesses,

---

[3] Trial counsel first dipped her pen in the poisonous well when cross-examining two of appellant's character witnesses on whether they thought appellant's misconduct was "dishonorable." Appellant's contemporaneous objections initially were overruled but after trial counsel started in with a third witness, the military judge reversed himself, sustained the objection, and instructed the panel:

> And because one of the potential punishments in this case
> is a dishonorable discharge, I am going to specifically
> instruct you to disregard the testimony of the last two
> witnesses on cross-examination indicating that the
> accused's conduct was dishonorable. I do not want you to
> interpret that opinion as an indication that those witnesses
> believe that the accused should receive a dishonorable
> discharge, because again, no witness can testify that they
> believe an accused should receive a punitive discharge.
> The decision is solely for you to make. So to avoid any
> issues, I am going to tell you to disregard those witnesses
> testimony that the accused's conduct was dishonorable.

each of whom spoke well of appellant's duty performance even while charges were pending and each of whom was willing to continue serving with appellant despite the conviction. When recalled on rebuttal, the company commander also lacked sufficient foundation to give an opinion on retention. He knew appellant worked in the dining facility and saw him perform his duties there. Thus the strength of the government's case in aggravation lay with appellant's stipulation of fact admitting to a five-year involvement with child pornography, his bringing the offensive material with him to Iraq, and most importantly with the videos themselves.

Trial counsel accurately and fairly described the content of the three videos of child pornography in closing, "10yo KAJ R@YGOLD, "12yo girls raped by daddy," and "Child - !!!!!!! – PTHC." The first depicts a naked adult male with an erect penis lifting a very small girl in the air in an outdoor setting and then engaging in intercourse with her. The second shows an adult male having sex with a pubescent girl but shifts midpoint to the adult male having sex with a different, equally young girl. The third video, arguably the most disturbing, involves an adult male with a prepubescent boy and girl performing multiple sexual acts on each other. We have no doubt that the panel was appalled when it reviewed this evidence during deliberations and that it played a significant role in determining the sentence. When considered with appellant's admissions in his stipulation of fact to viewing child pornography over an extended period of time preceding his enlistment, his transport of the offending images from Georgia to Iraq, and his additional violation of General Order No. 1, we find this to be strong evidence supporting a punitive discharge and the twenty-month sentence and total forfeitures assessed by the panel. We also are mindful that some of the sting of this sentence on appellant was absorbed by the terms of the pretrial agreement capping confinement at not more than twelve months.

This court has sufficient "experience and familiarity with [these offenses] to reliably determine what sentence would have been imposed at trial by the military judge or members." *United States v. Moffeit*, 64 M.J. 40, 43 (C.A.A.F. 2006) (Baker, J., concurring). Appellant's disgraceful conduct and disregard for good order and discipline persuade us in our experience that the panel would have decided upon a punitive discharge without regard to the government's improper argument. Nonetheless, we have reasonable doubts whether the members would have conferred a dishonorable discharge. *See United States v. Sales*, 22 M.J. 305, 307 (C.M.A. 1988). "To ensure no prejudice remains from the [government's improper argument]" we will set aside the dishonorable discharge and approve no more than a bad-conduct discharge. *United States v. Edmond*, ARMY 9900904, slip op. at 4 (Army Ct. Crim. App. 12 Oct. 2006) (unpub.) (reassessing sentence and setting aside reduction in grade on remand from C.A.A.F. due to "slightest doubt" whether trial counsel's misconduct impacted this component of sentence).

## DECISION

The findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted, the entire record, and in accordance with the principles of *United*

*States v. Sales*, 22 M.J. 305 (C.M.A. 1986), and *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006), to include the factors identified by Judge Baker in his concurring opinion in *Moffeit*, the court affirms only so much of the sentence as provides for reduction to the grade of Private E1, twelve months' confinement, total forfeiture of all pay and allowances, and a bad-conduct discharge.

Senior Judge JOHNSON and Judge KRAUSS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

7